UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JASMINE MAYRANT,<br><br>    Plaintiff,<br>v.<br><br>NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY, a political subdivision of the Commonwealth,<br><br>    Defendant. | Civil No.: 2:24-cv-715<br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT

Plaintiff, Ms. Jasmine Mayrant ("Ms. Mayrant"), by counsel, hereby pleads as follows against Defendant, Norfolk Redevelopment and Housing Authority ("NRHA"):

### PRELIMINARY STATEMENT

1. Ms. Mayrant, a public housing resident at a dwelling unit owned and managed by NRHA,[1] is legally blind. At the outset of her tenancy in June 2024, she made a simple request: that as a result of her disability,[2] NRHA issue all communications and notices to Ms. Mayrant and her attorney by email. Having an electronic copy of such documents allows Ms. Mayrant to magnify them on a computer or phone and read them in differential lighting.

2. Shortly after, NRHA formally granted the accommodation. Yet, despite acknowledging Ms. Mayrant's disability and agreeing the accommodation was reasonable and necessary, NRHA has consistently, willfully, and inexplicably refused or failed to provide documents to Ms. Mayrant or her counsel in an electronic format.

---

[1] Ms. Mayrant is a survivor of abuse, so all references to the property she resides at are omitted.
[2] The term "disability" is synonymous with "handicap" under 42 U.S.C. § 3602(h).

3. Ms. Mayrant has repeatedly urged NRHA to implement the reasonable accommodation to no avail, causing her great emotional distress.

4. Ms. Mayrant thus files this action under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et. seq*., seeking injunctive and declaratory relief; compensatory damages; punitive damages; nominal damages; and reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by (1) 28 U.S.C. § 1343(a)(3), as this action concerns an Act of Congress providing for the protection of equal rights or civil rights; (2) 28 U.S.C. § 1331, as this is a civil action arising under federal law; and (3) 42 U.S.C. § 3613, as this is a civil action based on a violation of the federal statutory right to fair housing.

6. Because the events or omissions giving rise to Ms. Mayrant's claims occurred in this judicial district, venue is proper under 28 U.S.C. § 1391(b)(2).

7. This action is filed in the proper division under Local Civil Rule 3, because the events or omissions giving rise to the claims occurred in this division.

## PARTIES

8. NRHA is a political subdivision of the Commonwealth of Virginia under Va. Code § 36-4 and a public housing agency under 42 U.S.C. § 1437a(b)(6)(A). It was created to help address the acute shortage of decent, affordable, and safe dwellings for low-income families. As a public housing agency, NRHA receives federal funds to operate the public housing program in Norfolk, Virginia, which it is required to operate in compliance with federal law. With a "$100 million annual capital and operating budget," according to its own website, NRHA is the "largest redevelopment and housing authority in Virginia and a national leader in real estate development and property management." NRHA, *About Us* (last accessed Dec. 13, 2024), https://perma.cc/4B6W-6G32.

9. Since June 12, 2024, Ms. Mayrant has been a low-income public housing tenant at a dwelling unit owned and managed by NRHA. She is a single mother of two minor children.

## FACTS

**I.   Ms. Mayrant Requested and Was Granted a Reasonable Accommodation.**

10. It is NRHA's custom, policy, and practice to issue notices and communications to residents by sending a hard copy of such documents in regular size font.

11. Ms. Mayrant is a person with disabilities. Among other diagnoses, Ms. Mayrant has a congenital condition affecting one eye that renders her completely blind in that eye, and her other eye has a vision of 20/600.[3] Thus, she is legally blind. Ms. Mayrant is unable to read hard copy documents in regular font. In order to properly read documents, Ms. Mayrant requires an electronic copy of documents so that she can magnify them on a computer or phone and read with differential lighting.

12. On June 12, 2024, Ms. Mayrant signed a lease for herself and her two minor children for a public housing unit with NRHA. While at the rental office, Ms. Mayrant told the NRHA representative assisting her that she was legally blind and could not read documents. Ms. Mayrant was accompanied by a representative from the Legal Aid Society of Eastern Virginia ("LASEV") who read the documents to Ms. Mayrant. Ms. Mayrant cannot tell where she needs to sign something unless someone has their finger on the page, and she needs to have the paper an inch or two from her eye to see the finger.

---

[3] According to the American Foundation for the Blind, "20/200 vision is the clinical definition for legal blindness," so a "person with 20/600 vision is considered legally blind." Reference, *What is 20/600 Vision?* (last updated Aug. 4, 2025), https://perma.cc/2VB2-DH8G (noting that a "person with 20/600 vision sees something at 20 feet away that a person with typical 20/20 vision sees at 600 feet," and comparing such eyesight to a "newborn's eyesight."); *see also* American Foundation for the Blind, *Key Definitions of Statistical Terms* (last updated Feb. 2024), https://perma.cc/A8YG-X2UM.

3

13. On July 1, 2024, LASEV submitted a letter to NRHA requesting a reasonable accommodation for Ms. Mayrant. The letter stated that Ms. Mayrant was legally blind and asked that all notices and written communications from NRHA be provided simultaneously to Ms. Mayrant and LASEV by email. As noted in the letter, this accommodation was necessary for Ms. Mayrant to have equal use and enjoyment of her dwelling. A copy of the reasonable accommodation request is attached as **Exhibit A.**

14. On July 18, 2024, NRHA sent a letter by email to Ms. Mayrant and LASEV approving the accommodation and specified that "[a]ll written communications and notices from NRHA will be provided to both Ms. Mayrant and Ms. Bonfiglio at the same time to the following emails: mayrantjasmine24@gmail.com and Legal Aid – MelissaB@laseva.org." A copy of the reasonable accommodation approval letter is attached as **Exhibit B**.

II. **NRHA Has Consistently, Willfully, and Inexplicably Failed to Implement the Reasonable Accommodation Request.**

15. Despite acknowledging Ms. Mayrant's disability and agreeing to the reasonable accommodation request, NRHA has consistently, willfully, and inexplicably refused or failed to provide documents to Ms. Mayrant or LASEV in an electronic format.

16. On October 8, 2024, LASEV emailed NRHA and its counsel, noting Ms. Mayrant's 8-year-old daughter found a hard copy inspection notice dated September 27, 2024, on Ms. Mayrant's door. That notice was not provided by email to Ms. Mayrant or LASEV, in violation of the reasonable accommodation. Although that notice stated an inspection would occur on October 1, 2024, no one from NRHA came to do the inspection. The October 8 email expressly noted NRHA was violating fair housing law and requested that all notices immediately be sent to Ms. Mayrant and LASEV by email. NRHA failed to respond to that email. A copy of the October 8 email with the September 27 inspection notice is attached as **Exhibit C**.

17. Shortly thereafter, NRHA sent three more hard copy notices to Ms. Mayrant. The first notice is a lease cancellation notice dated October 8, 2024, alleging that Ms. Mayrant owed $4.00 in rent. A picture of that notice is attached as **Exhibit D**. Ms. Mayrant then became aware of another hard copy notice placed on her door introducing the new property manager, along with a document titled, "Important Message for All [] Residents!!!" A picture of those notices are attached as **Exhibit E**. Neither notice was emailed to Ms. Mayrant nor LASEV.

18. A few days later, Ms. Mayrant realized she received a hard copy of a monthly rent statement for November 2024, which was not emailed to Ms. Mayrant or LASEV. A picture of that notice is attached as **Exhibit F**.

19. It is NRHA's custom, practice, and policy to send monthly rent statements to each tenant that notifies the tenant of their monthly rent, any excess utility charges incurred, any maintenance or service charges, and any other fees assessed to the tenant's account. Tenants typically receive their monthly rent statements in the last two weeks of the month. Yet NRHA has never sent a rent statement by email to Ms. Mayrant or LASEV.

20. Ms. Mayrant has periodically received envelopes in the mail that she has either misplaced or has not opened promptly because she cannot read hard copy notices. Receiving these envelopes causes Ms. Mayrant great stress and embarrassment because she cannot read them and worries that she is missing something important. She sometimes asks her 8-year old daughter to read notices to her, but that compounds her stress because she doesn't want to worry her daughter and she cannot verify that her daughter is reading the notices correctly and completely. Ms. Mayrant recently opened a stack of envelopes and found additional rent statements that were sent to her only in hard copy.

21. Given that Ms. Mayrant is visually impaired, not only is Ms. Mayrant unable to read hard copy documents, but she often misses envelopes and does not see notices that may be posted on her door or put in the mail slot.

22. On October 31, 2024, LASEV sent a letter to NRHA noting that Ms. Mayrant was continuing to receive hard copy documents, and that NRHA was discriminating against Ms. Mayrant on the basis of her disability by failing to send her written communications and notices by email. That letter again requested that all notices and written communications be emailed to Ms. Mayrant and LASEV, that the October 8, 2024, lease cancellation notice be rescinded, and that a tenant ledger be provided to LASEV by email. NRHA acknowledged receipt of the letter but has still failed to send Ms. Mayrant and LASEV any notices or communications by email. NRHA has not responded to the request to rescind the lease cancellation notice. Nor has NRHA provided a ledger as requested, in violation of the Virginia Residential Landlord Tenant Act, Va. Code § 55.1-1200 *et. seq.*. The October 31, 2024, letter is attached as **Exhibit G**.

23. At the end of November 2024, Ms. Mayrant became aware of a hard copy notice that was posted on her door notifying all residents of housekeeping inspections that would be conducted between December 2 and December 6. That notice was never emailed to Ms. Mayrant or LASEV. A picture of that letter is attached as **Exhibit H**. Shortly after that notice was distributed to all residents, Ms. Mayrant became aware that other tenants had received a notice apologizing for the tone and incorrect grammar of that housekeeping notice, but Ms. Mayrant did not receive a copy of that apology notice either in hard copy or by email.

24. In early December 2024, Ms. Mayrant was alerted to the fact that she received a hard copy document titled, "Notice of Lease Review of Continued Occupancy," stating that she had a meeting with the Manager scheduled for December 18, 2024 at 9:30 a.m. A picture

of that notice is attached as **Exhibit I**. Neither Ms. Mayrant nor LASEV received an email copy of that notice.

25. Ms. Mayrant also received a hard copy document titled "Inspection Notice," stating that her unit would be inspected on December 9, 2024. That inspection notice was never emailed to either Ms. Mayrant or LASEV. A picture of that notice is attached as **Exhibit J**.

26. The inspection was not conducted on December 9, 2024, and was instead conducted—without notice to Ms. Mayrant or LASEV—the following day. During the inspection, NRHA employees asked Ms. Mayrant to sign a form related to the inspection, despite NRHA being aware that she is unable to read such hard copy documents in regular font. Ms. Mayrant signed the form, as she was embarrassed and was told that signing them would confirm the inspection was conducted. She was unable to read anything on the form.

27. Ms. Mayrant has been—and will continue to be—injured by NRHA's discriminatory conduct and has suffered (and will continue to suffer) damages as a result thereof. Such damages include, but are not limited to, emotional and physical distress, loss of sleep, anxiety, fear, shame, humiliation, and physical pain. The impact of NRHA's conduct on Ms. Mayrant's state of mind and physical condition has been compounded by the fact that she is a survivor of abuse, and has been diagnosed with post-traumatic stress disorder, anxiety, and depression.

28. NRHA's conduct described herein was undertaken with malice and/or a reckless and wanton disregard for Ms. Mayrant's civil rights. Despite repeated attempts by Ms. Mayrant and her counsel to resolve this without resort to litigation, NRHA has consistently and inexplicably failed to implement the straightforward accommodation to which it agreed was reasonable and necessary back in July 2024.

## CAUSES OF ACTION

### COUNT I
### Constructive Denial of Reasonable Accommodation
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B))

29. Ms. Mayrant restates each of the allegations in the preceding paragraphs as if set forth fully herein.

30. Under the FHA, discrimination on the basis of disability includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B).

31. Ms. Mayrant has a disability—that is, a "handicap"—within the meaning of 42 U.S.C. § 3602(h) in three respects. First, Ms. Mayrant's vision is impaired, such that she is legally blind. This physical impairment renders her unable to read hard copy documents in regular font. *Id.*(h)(1). Second, NRHA regarded Ms. Mayrant as having such an impairment since June 12, 2024, when she first communicated her impairment to NRHA. *Id.*(h)(3). Third, Ms. Mayrant has a record of having such an impairment. *Id.*(h)(2).

32. Ms. Mayrant's requested accommodation to NRHA's policy, custom, and practice—that all notices and written communications from NRHA be provided simultaneously to Ms. Mayrant and LASEV by email—was reasonable and necessary to afford Ms. Mayrant an equal opportunity to use and enjoy her dwelling.

33. Without the accommodation, Ms. Mayrant is unable to apprise herself of the content of NRHA's communications and notices. By contrast, and as NRHA acknowledged by granting the accommodation, the accommodation imposes no or, at most, a de minimus, administrative or financial burden on NRHA, and it in no way alters the nature of the program.

34. Although NRHA formally granted Ms. Mayrant's request for an accommodation in July 2024, since then it has failed or refused to implement the requested accommodation.

35. Between July 2024 and present, Ms. Mayrant has repeatedly—to no avail—urged NRHA to take corrective action and implement her accommodation.

36. NRHA's consistent refusal or failure to implement Ms. Mayrant's reasonable accommodation constitutes a constructive denial of the request, which violates 42 U.S.C. § 3604(f)(3)(B). *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 271 (4th Cir. 2013) ("A denial of a request need not be explicit, but rather may be treated as a 'constructive' denial based on the decision maker's conduct.") (citation omitted); *see also, e.g.*, *Enica v. Principi*, 544 F.3d 328, 342 (1st Cir. 2008) (noting that once a decision maker "agrees to provide a particular accommodation, it must act reasonably in implementing said accommodation.") (citations omitted).

37. Ms. Mayrant is an aggrieved person under 42 U.S.C. § 3602(d) & (i), such that she is entitled to maintain this action under 42 U.S.C. § 3613(a). She has been, and will continue to be, injured by NRHA's past and ongoing discriminatory acts and omissions and has suffered (and will continue to suffer) damages as a result thereof, including but not limited to emotional and physical distress, loss of sleep, anxiety, fear, shame, humiliation, and physical pain.

### COUNT II
### Disparate Treatment On the Basis of Disability
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2)(A))

38. Ms. Mayrant restates each of the allegations in the preceding paragraphs as if set forth fully herein.

39. Under the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services . . . because of [that person's] [] handicap[.]" 42 U.S.C. § 3604(f)(2)(A).

40. Ms. Mayrant has a disability—that is, a "handicap"—within the meaning of 42 U.S.C. § 3602(h) in three respects. First, Ms. Mayrant's vision is impaired, such that she is legally blind. This physical impairment renders her unable to read hard copy documents in regular font. *Id*.(h)(1). Second, NRHA regarded Ms. Mayrant as having such an impairment since June 12, 2024, when she first communicated her impairment to NRHA. *Id*.(h)(3). Third, Ms. Mayrant has a record of having such an impairment. *Id*.(h)(2).

41. As NRHA has known since June 12, 2024, unlike all or the vast majority of residents at properties owned and managed by NRHA, because of her disability Ms. Mayrant cannot read hard copy documents in regular font. Despite being well aware of this fact, NRHA has continued to solely issue Ms. Mayrant hard copy documents in regular font that pertain to the terms, conditions, and privileges of the rental of the dwelling. Similarly, NRHA requested that Ms. Mayrant sign a hard copy document in regular font, without first providing it to her in an accessible format, despite knowing of Ms. Mayrant's disability. This course of conduct—for which it has offered no explanation or assurance of future compliance—has continued despite Ms. Mayrant's attempts to convince NRHA to alter its course of conduct.

42. Based on NRHA's repeated refusal or failure to implement Ms. Mayrant's request for an accommodation—which NRHA itself acknowledged was necessary and reasonable by formally granting it in July 2024—Ms. Mayrant was (and continues to be) treated differently, in whole or in part, because of her disability. On one hand, NRHA conveys information to its other residents in a way that, so far as NRHA knows, they can discern on their own; on the other hand, NRHA has consistently conveyed such information to Ms. Mayrant through a method by which it *knows* Ms. Mayrant cannot perceive on account of her disability.

43. This has resulted in Ms. Mayrant being unable to inform herself of important information, such as whether she owes NRHA any money, whether she needs to prepare for an inspection, or even whether her lease may be terminated. Nor has Ms. Mayrant been able to apprise herself of general updates or services that have or may have been conveyed through communications or notices.

44. This inexplicable refusal to implement the accommodation departs from NRHA's policy, as stated by its "Occupancy/Reasonable Accommodations Specialist," to "implement reasonable accommodations on an expedited basis" and as "soon as feasible." Exhibit B.

45. Based on this course of conduct, NRHA has and continues to intentionally "discriminate against" Ms. Mayrant in the "terms, conditions, or privileges of . . . [her] rental of [the] dwelling, or in the provision of services . . . because of" her disability. 42 U.S.C. § 3604(f)(2)(A).

46. Ms. Mayrant is an aggrieved person under 42 U.S.C. § 3602(d) & (i), such that she is entitled to maintain this action under 42 U.S.C. § 3613(a). She has been, and will continue to be, injured by NRHA's past and ongoing discriminatory acts and omissions and has suffered (and will continue to suffer) damages as a result thereof, including but not limited to emotional and physical distress, loss of sleep, anxiety, fear, shame, humiliation, and physical pain.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Mayrant demands a trial by jury on all issues triable as of right.

## PRAYER FOR RELIEF

Ms. Mayrant respectfully requests that this Court award her the following relief:

1. Enter a declaratory judgment that NRHA's discriminatory acts, policies, and housing practices described herein violated the Fair Housing Act, 28 U.S.C. § 2201;

2. Enter a preliminary and permanent injunction directing NRHA; their agents, employees, successors, and assigns; and those acting in active concert, combination, or participation with them, to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory housing practices described herein and to prevent similar occurrences in the future, 42 U.S.C. § 3613(c)(1);

3. Award compensatory damages in an amount to be determined by a jury that would fully compensate Ms. Mayrant for her injuries suffered as a result of NRHA's discriminatory housing practices alleged herein, 42 U.S.C. § 3613(c)(1);

4. Award punitive damages in an amount to be determined by a jury that would punish NRHA for the malicious and/or willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future, 42 U.S.C. § 3613(c)(1);

5. Award nominal damages in an amount to be determined by a jury;

6. Award reasonable attorneys' fees and costs, 42 U.S.C. § 3613(c)(2); and

7. Award other relief as this Court deems just and proper.

Dated: December 13, 2024

                      Respectfully submitted,
                      **JASMINE MAYRANT**
                      By:   /s/ *Brandon L. Ballard*
                            Brandon L. Ballard (VSB No.: 95346)
                            Strategic Litigation Attorney
                            Melissa B. Bonfiglio (VSB No.: 90016)
                            Managing Attorney
                            LEGAL AID SOCIETY OF EASTERN VIRGINIA
                            125 St. Paul's Blvd., Suite 400
                            Norfolk, VA 23510
                            BLB Ph: (757) 648-1241
                            MBB Ph: (757) 627-3326
                            Fax: (757) 622-8102
                            Email: brandonb@laseva.org
                            Email: melissab@laseva.org
                            *Counsel for Plaintiff*