**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| JASMINE MAYRANT, | |
| Plaintiff, | |
| v. | Civil No.: 2:24-cv-715 |
| NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY, a political subdivision of the Commonwealth, | |
| Defendant. | |

## <u>DECLARATION OF BRANDON L. BALLARD, ESQ.</u>

I, Brandon L. Ballard, Esq., declare as follows:

1.      My name is Brandon Lewis Ballard. I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I, along with Ms. Melissa Bonfiglio, Esq., represent the Plaintiff in this matter. We are employed by the Legal Aid Society of Eastern Virginia ("LASEV"). Founded in 1966, LASEV is a non-profit law firm that provides representation in civil matters to the low-income individuals of Hampton Roads and parts of the Eastern Shore. LASEV strives to both meet the individual legal needs of its clients and to challenge systemic injustice and the root causes of poverty and inequality. *See* LASEV, https://laseva.org/about/.

3.      At this time, counsel seeks $23,197.77 in attorney's fees and $501.50 in costs. The latter represents necessary expenses incurred in this action by LASEV. In particular, the expenses incurred were for the filing fee and service of process. A true and accurate copy of

the two (2) invoices, which LASEV paid, is attached to the brief. *See* ECF 31-6. Finally, the award should be made out to LASEV rather than to Ms. Bonfiglio or Mr. Ballard.

4.      LASEV uses "Kemp's Case Works" ("Kemps"), which is a legal case management software that, *inter alia*, allows its users to contemporaneously track time spent on each client's case and record the tasks performed during that period. Each case is assigned a unique case number.

5.      This matter's case number is 24E-1010847.

6.      Each attorney at LASEV has a unique staff number. My staff number is 200. Ms. Bonfiglio's staff number is 241. Each entry in Kemps notates the attorney who performed the work by providing the attorney's staff number.

7.      Attached hereto as **Exhibit A** are a true and accurate copy of the contemporaneous time records for this matter, which I downloaded from Kemps. No subsequent alterations were made (other than the phrase affixed to the top of the document entitled, "Exhibit A"). There are a few entries that are redacted because they mention a minor's name or contain sensitive information. Counsel does not seek compensation for those entries. *See infra*, at ¶ 30.

8.      Also attached hereto as **Exhibit B** is a true and accurate copy of an Excel spreadsheet of the time records for this matter. This was necessary because the time records downloaded from Kemps do not show the entire description of the task performed for entries of a certain length. Rather, the description in those instances are cut off. LASEV's Community Support Specialist, Megan Marmottin, describes how she exported the information from Kemps to Excel, and avers that no entries were altered. I can confirm that, upon review, no entries were altered. Upon receiving the aforesaid Excel spreadsheet and confirming its accuracy, I saved it as a PDF file. Both Exhibits A and B are provided to the Court and opposing

counsel to demonstrate this fact. The same entries redacted in Exhibit A are also redacted in Exhibit B.

### A.    *Mr. Ballard's Experience*

9.    In December 2019, I graduated *magna cum laude* from the Elon University School of Law. Among other accolades, I was an articles editor for *Elon Law Review*, a member of the law school's moot court board, and obtained a full-time, three-month externship with the Honorable Albert Diaz on the United States Court of Appeals for the Fourth Circuit.

10.    Since June 2020, I have been employed as an attorney at LASEV.

11.    Since 2020, I have been a good standing member of the Virginia Bar. I am also a good standing member of (a) the United States District Court for the Eastern District of Virginia; (b) the United States Bankruptcy Court for the Eastern District of Virginia; and (c) the United States Court of Appeals for the Fourth Circuit.

12.    Between June 2020 and April 2022, at LASEV I represented low-income individuals in local general district courts, juvenile domestic and relations courts, and circuit courts in housing, civil rights, consumer protection (*e.g.* unfair debt collection practices; autofraud cases), debt defense, public benefits, and family law matters. I largely, however, focused on cases pertaining to civil rights, housing, and consumer protection, including litigation and/or negotiation of claims under statutes like the Federal Fair Debt Collections Practices Act and Federal Fair Credit Reporting Act. My housing practice was especially focused on representing clients residing in public or federally subsidized housing in eviction matters and matters addressing poor housing conditions, federal and state fair housing act ("FHA") violations, and constitutional violations under the Due Process and Free Speech Clauses. My average caseload during this period ranged from 60 to 100 cases. In this role, I

had little oversight in my day-to-day practice, in part because I started at the height of the COVID-19 Pandemic. That being so, a large portion of my motions practice early on consisted of motions to quash (or stay) evictions pursuant to the numerous state and federal laws passed during the pandemic that regulated landlord-tenant relations. (*e.g.* the Federal CDC Eviction Moratorium; the CARES Act).

13.     Effective April 2022, I was selected for a prestigious fellowship sponsored by a national organization known as Equal Justice Works ("EJW"). During this time, I continued my work at LASEV. Through state and federal litigation and administrative advocacy, the two-year fellowship addressed, *inter alia*, local systemic barriers to obtaining and maintaining affordable and habitable housing, including litigation against Section 8 landlords for charging tenants illegal fees. *See* EJW, *Brandon L. Ballard Profile*, https://www.equaljusticeworks.org/fellows/brandon-l-ballard/.

14.     During the two-year EJW fellowship at LASEV, I achieved a number of victories for my clients. For example, as lead counsel, I defended a public housing resident in a state court eviction proceeding. I requested a jury trial in that matter. In addition to state-law affirmative defenses, I raised and litigated an affirmative defense based upon the Second Amendment. Although the matter was briefed, on the eve of trial the Circuit Court for the City of Portsmouth granted my motion to dismiss for lack of jurisdiction based upon a novel question of state law. *Portsmouth Redevelopment and Housing Authority v. Lightfoot*, No. CL 22-4753, 2023 WL 7418797 (Va.Cir.Ct. Sep. 20, 2023). The matter has yet to be addressed by a Virginia appellate court. By way of further example, I obtained a favorable settlement (the terms of which are confidential) on behalf of a low-income tenant for whom I instituted an action under the Federal False Claims Act ("FCA"). *See United States of America, ex. reel*

*Felicia Cost v. American Homes of Eastern Virginia, Inc. et. al.*, Civil No. 2:23-cv-00450 (E.D. Va. Sept. 13, 2023). The complaint alleged a regional landlord had for years charged this low-income Section 8 tenant rent in excess of the amounts authorized by the local public housing authority. The case required not only knowledge of the FCA, but also knowledge of federal statutes and regulations governing the Section 8 Housing Choice Voucher program.

15.     My EJW fellowship and prior experience as a staff attorney gives me unique insight into the federal statutes and regulations that often form the background of federal civil rights actions, such as the instant action, which Ms. Bonfiglio and I bring against landlords and housing authorities. My experience also gives me unique insight into the eviction process and how state and federal claims can be implicated by it. To my knowledge, no local attorney in the Hampton Roads region regularly litigates FHA claims, particularly for the communities we serve. Nor do I believe there are many local attorneys (other than attorneys who represent landlords) who have innate understanding of the public housing statutes and regulations that form the backdrop of this action.

16.     Effective April 2024, I was promoted to the position of Strategic Litigation Attorney, in which I handle complex/impact litigation in state and federal trial and appellate courts on behalf of low-income individuals. Broadly, my experience includes the filing of Chapter 7 and 13 bankruptcies; litigation and negotiation of claims arising under 42 U.S.C. § 1983, the Federal Fair Housing Act, the Virginia Consumer Protection Act, the Real Estate Settlement Procedures Act, the Federal Fair Debt Collections Practices Act, the Administrative Procedure Act, and source-of-funds discrimination claims under the Virginia Fair Housing Law. I also have limited experience with representing clients before the Virginia Fair Housing Board and in the conciliation process.

17.     The only other attorney in my unit, "the Strategic Litigation and Community Support Team," is Ms. Bonfiglio. *See* LASEV, https://laseva.org/about/meet-the-team/. The other persons in our unit are "community support specialists." They are not trained as paralegals or office assistants. Rather, they largely conduct intake applications and community outreach. In fact, our unit doesn't employ a paralegal or office assistant dedicated to assisting us with the day-to-day tasks of litigation, such as the drafting of correspondence, discovery, or filing of pleadings. Based upon my over five years of experience as a legal aid attorney, in which I have the continuous opportunity to interact with legal aid organizations in Virginia and across the nation, this is not uncommon for a legal aid organization with the limited funding and restrictions that come along with it. Moreover, Ms. Bonfiglio and I are currently the only attorneys at LASEV that appear with some frequency in federal court, and we are the only attorneys who regularly practice in bankruptcy court. The one exception is a LASEV attorney in our Disability Rights Unit who at times litigates social security matters in federal district court.

18.     In a matter in which Ms. Bonfiglio and I co-counsel, *generally* speaking, I am the attorney tasked with taking the lead on pre-suit investigations, legal research, and the drafting of pleadings and briefs. Ms. Bonfiglio invariably, of course, contributes—whether through her own research, drafting, or revising drafts. In this regard, from my perspective her years of experience as a "big law attorney" provides invaluable insight and guidance in each case. Moreover, we generally share responsibilities in the discovery process and trial preparation, depending on the complexity of the case and our workload at any point time. Unlike me, however, Ms. Bonfiglio has many roles, including the oversight of the Community Support Team and other tasks associated with being a Deputy Director.

19.     I have experience litigating in this Court. For example, in *Minnesota Life Insurance v. Alexander et. al*., Civil No. 2:22-cv-00207 (E.D. Va. May 16, 2022), an interpleader dispute over life insurance proceeds, Ms. Bonfiglio and I obtained $34,200.00 for our indigent client by way of a favorable settlement. We litigated the case up to the eve of trial. The case resulted in several decisions that can be found on Westlaw. *Minn. Life. Ins. Co. v. Alexander*, 694 F.Supp.3d 733 (E.D. Va. Sept. 25, 2023); *Minnesota Life Ins. Co. v. Alexander*, 694 F. Supp. 3d 742 (E.D. Va. 2023); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4648083 (E.D. Va. Nov. 1, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4691008 (E.D. Va. Nov. 6, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4723355 (E.D. Va. Nov. 7, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4679137 (E.D. Va. Nov. 4, 2024). In that case, we conducted extensive discovery (*e.g.* depositions), filed motions *in limine* and a summary judgment motion based upon a voluminous record, and retained and successfully defended the admissibility of an expert's testimony.

20.     I also have experience with litigating civil rights actions in this Court. For example, in *Elliott v. Norfolk Redevelopment and Housing Authority*, 2:24-cv-00558 (E.D. Va. 2024), Ms. Bonfiglio and I brought Section 1983 claims on behalf of a public housing resident under the Due Process Clause and National Housing Act, alleging the housing authority had a custom, pattern, or practice of failing to inform residents of the hardship exemption to the minimum rent. The case resulted in a favorable settlement that benefited residents other than the named plaintiff. For example, the housing authority agreed to change the manner in which it notified public housing residents of the hardship exemption to the minimum rent, to not

modify the revised forms absent a good-faith reason and opportunity for plaintiff's counsel to respond, and to notify all public housing residents of the changes.

21.     Presently, Ms. Bonfiglio and I have two other civil rights actions pending in this Court. *Harris v. Newport New Redevelopment and Housing Authority*, Civil No. 4:25-cv-00108 (E.D. Va. 2025) (alleging violations of due process and free speech clauses); *Williams v. Newport News Redevelopment and Housing Authority et. al.*, Civil No. 4:25-cv-00116 (E.D. Va. 2025) (alleging violations of due process clause and bringing common law claims of defamation and breach of contract against private defendant).

22.     I also have experience litigating consumer protection matters in this Court. In *Powell v. Wilmington Savings Fun Society, FBS, et. al.*, 2:24-cv-00541 (E.D. Va. 2024), Ms. Bonfiglio, the law firm of Kelly Guzzo, and I brought claims under the common law and the Real Estate Settlement Practices Act in a so-called "zombie mortgage" case. The matter resulted in a settlement wherein the mortgage company agreed to rescind the foreclosure sale and mark the mortgage as satisfied. More recently, Ms. Bonfiglio and I filed an adversary proceeding against HUD and mortgage companies, alleging violations of the Administrative Procedure Act; fraud; and seeking reformation of the client's reverse mortgage. *Evelyn Bannister Sample et. al. v. United States Department of Housing and Urban Development et. al.*, Case No.: 25-07034-SCS (Bankr. E.D. Va. 2025). The case is still pending.

23.     In all, given my over five years of experience at LASEV, I have experience in all aspects of federal and state litigation. As a very conservative estimate, I have tried at least 50 bench trials in Virginia general district and circuit courts. I have demanded a trial by jury on several occasions in state and federal court but have never had the chance to try a trial by jury. Moreover, I have experience in state and federal court with drafting, legal research, discovery

(such as the taking of depositions), and settlement negotiations. Given my experience in the *Minnesota Life Insurance Co.* matter, and a few FHA matters in state court where I retained a client's psychologist, I also have experience with expert witness discovery.

24.     Though not directly relevant to this action, I will note my appellate experience. I have been counsel of record for parties in the Court of Appeals of Virginia or the Supreme Court of Virginia in three matters. For example, in *Moore v. Joe*, 76 Va. App. 509 (2023), as lead appellee counsel I successfully defended a judgment and, in so doing, obtained a decision clarifying the constitutional standard a non-parent must satisfy to obtain custody over a parent's objection. I have also represented *amici* in Virginia appellate courts, including well-respected organizations like the Virginia Trial Lawyers Association and the National Housing Law Project. *See, e.g.*, *Green v. Portfolio Recovery Assocs., LLC*, 83 Va. App. 28 (2024) (en banc); Amici Brief in Support of Appellee's Petition for Rehearing En Banc, *Woodrock River Walk LLC v. Rice*, 2024 WL 5362994.

25.     With respect to my professional affiliations, I am a member of the Fair Housing Enforcement Committee for Housing Opportunities Made Equal ("HOME"), the Bench-Bar Liaison for the Young Lawyers Division of the Norfolk and Portsmouth Bar Association, and, among other working groups, a member of the Legal Aid Statewide Appellate Working Group. I am also a general member of the National Association of Consumer Advocates ("NACA").

26.     I have been interviewed by local news organizations to discuss a variety of topics, including (a) so-called "zombie mortgages, *see* Erin Miller, *"Zombie Mortgage threatens Virginia Beach Family's Home* (Nov. 11, 2024), https://www.wtkr.com/news/in-the-community/virginia-beach/zombie-mortgage-threatens-virginia-beach-familys-home#google_vignette; and (b) tenant protections, *see, e.g.*, Ali Sullivan, *Virginia's Lingering*

*Pandemic-Era Eviction Protections End Today*, Virginian Pilot (June 27, 2022), https://www.yahoo.com/news/virginia-lingering-pandemic-era-eviction-224000847.html.

27.     Among my published writings include a blog post I wrote entitled, "The Underenforcement of Disabled Tenants' Rights in Virginia's Eviction Process," Equal Justice Works Blog (April 18, 2023), http://bit.ly/3vYVA5j. The post discusses my past experience with litigating failure-to-accommodate claims as counterclaims and/or affirmative defenses in state eviction matters, particularly against federally subsidized housing providers.

28.     I have twice been asked to present at the annual conference hosted by Virginia Poverty Law Center ("VPLC") on consumer law and the *Moore v. Joe* decision. As an EJW fellow, I gave a presentation to other fellows on fair housing issues that arise in and in relation to eviction proceedings. And a local housing authority, Portsmouth Redevelopment and Housing Authority, asked me to present on source-of-funds discrimination under Virginia law to its staff and personnel. Finally, I periodically update LASEV's staff attorneys on pertinent legal developments.

**B.     *Reasonableness of the Time Expended***

29.     I am familiar with the Fourth Circuit's three-step framework for ascertaining the reasonableness of fee awards. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). In total, the total hours contemporaneously recorded in this matter is **96.3**.

30.     I am aware of, and take seriously, the Supreme Court's admonition to exercise voluntary billing judgment in these matters. Consequently, I have voluntarily excluded various entries:

a.      There are five entries, totaling 4.4 hours (12/11/24, 12/12/24, 12/16/24, 1/9/25, 1/21/25[1]), for which no description of tasks are provided by me. Rather than make an educated guess as to what those tasks were, I am excluding those hours.

b.      Certain entries are lumped with purely administrative or clerical tasks. *See, e.g.*, Entry 12/13/24 ("File Compl. Prepared and filed proposed summons. Drafted notice of appearance."). I am aware that such overhead costs are not compensable. Others, *e.g.* Entry dated 2/26/25 ("filing pleadings"), are not lumped with non-compensable tasks. Upon review of the records, it appears that I performed all of the administrative tasks. Courts have a variety of ways in which to approach this problem. *E.g. Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 520–21 (W.D. Va. 2016) (reducing *hours expended* by percentage amount due in part to time spent on clerical tasks). In my view, given the entries that are lumped together, I think it best to view the total 15% voluntary reduction, *see infra*, at ¶ 37, to the final lodestar figure as ensuring that NRHA is not charged for such overhead expenses. That is because initially I was inclined to apply a 10% reduction to the total lodestar figure. Upon determining it would be simpler to account for administrative expenses at the end of my calculations, however, I opted to add an additional 5% to the reduction applied to the final lodestar figure to account for the administrative tasks and other lingering issues, if any.

c.      I voluntarily exclude entries, totaling 8.8 hours, that (a) are clearly, or at least arguably, not directly related to the central dispute in this case, or (b) provide an arguably vague description of the tasks performed. *See* Entries 11/23/24; 11/26/24;

---

[1] When only one time entry falls on a particular day, I will reference the entry by simply referring to the date on which it was recorded. Additional information will be provided when necessary.

12/09/24 ("Reviewed pics sent by CL[2][.]"), 12/10/24 ("Texts with CL re: inspection[.]");

1/30/25 (documenting two-hour communications and interactions with client and stating:

"Early morning tests from CL – just found rent statement from NRHA . . . CL very upset

and stressed. Went to CL's house – got hard copies of statement and December 2024

statement."); 2/6/25 ("Neighbors noise complaints[.]"); 3/26/25 (one hour entry, stating:

"CL's house; picked up packet (recert docs) left on her door[.]"); 3/27/25; 4/1/25 ("Call

with CL re: incident at Watergate today; draft letter to OC."); 4/3/25; 5/2/25; 5/5/25;

5/21/25; 7/22/25; 9/22/25 ("Call with CL."). Given Ms. Bonfiglio's prolonged professional

relationship with Ms. Mayrant, a few of those communications, particularly the entries on

January 30, 2025, and March 26, 2025, concerned topics that are both related and unrelated

to this action. Nevertheless, I am erring on the side of caution by excluding them.

31.    ***Final calculation of total hours for which compensation is sought***: Thus, the

hours for which we seek compensation are as follows. First, the total hours expended in this

matter, 96.30 hours, minus the voluntary exclusions set forth above, 16.2 hours, comes out to

**80.1 hours**. Of those hours, **20.6 hours** are attributable to Ms. Bonfiglio, whereas **59.5 hours**

are attributable to Mr. Ballard.

32.    ***Breakdown of major tasks for which counsel seeks compensation***. To provide

context for the Court, I thought it would be useful to break down the hours expended on each

major task during the course of this litigation:

     a.    Between October and December 2024, Ms. Bonfiglio seeks compensation

for 6.5 hours expended on consulting with Ms. Mayrant about NRHA's noncompliance,

and for drafting correspondence altering NRHA to its noncompliance. In my view, this

---

[2] "CL" is shorthand for "Client."

work was "necessary to secure the final result obtained from th[is] litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (cleaned up).

b.      Between December 9, 2024, and December 13, 2024, Ms. Bonfiglio seeks compensation for 2 hours, whereas I seek compensation for 9.4 hours, for investigating, researching, and drafting the complaint, totaling 11.4 hours. In my view, this is an appropriate amount of time, and no duplicative work took place. It is well established, moreover, that such tasks are compensable. *Webb v. Bd. of Educ. of Dyer Cnty., Tenn*., 471 U.S. 234, 243 (1985). If anything, the time for which counsel seeks compensation is modest given the heightened pleading standard in federal court. *Prison Legal News v. Stolle*, 129 F.Supp.3d 390, 399 (E.D. Va. 2015) (approving full recovery of fees for work performed prior to filing of the complaint, in part because given *Twombly* and *Iqbal*, "there is arguably now an even greater need to conduct a thorough pre-filing investigation.").

c.      I seek compensation for 1.3 hours expended on researching and drafting the Request for Entry of Default. *See* Entries 1/9/25, 1/13/25. This time could be viewed as excessive, but given that NRHA's executive director wasn't served, I felt compelled to preemptively research whether the individual served was an appropriate person to accept substitute service. In any event, that research was included in not only the Request for Entry of Default, but also the Brief in Support of the Motion for Default Judgment, since one of the elements a plaintiff must prove to obtain default judgment is that service of process was proper. To the extent NRHA argues excessiveness, I am of the view that this is another instance which is accounted for by the reduction to the final lodestar figure.

d.      Because the research conducted for the briefs and attachments in support of the motions for default judgment and preliminary injunction overlapped in many respects,

I set forth the total time expended on both motions (though, I will note that several entries note which brief Ms. Bonfiglio or I worked on). In total, I seek compensation for 15.7 hours, *see generally* Entries by Mr. Ballard between 1/13/25 and 2/5/25, whereas Ms. Bonfiglio seeks compensation for 4 hours, *see* Entries by Ms. Bonfiglio dated 1/30/25, 2/3/25, 2/4/25, 2/5/25. That totals 19.7 hours. Ms. Bonfiglio largely reviewed and revised my initial drafts. Thus, no duplicative work occurred, and the hours expended are in my opinion reasonable.

e.    With respect to reviewing, legal research, and drafting a response to NRHA's Motion to Vacate Default (ECF Nos. 14, 15, 16), I seek compensation for 10.3 hours. *See generally* Entries dated 2/24/25 through 2/26/25. In my view, this is reasonable and not excessive. Ms. Bonfiglio seeks compensation for 1.5 hours. *See* Entry dated 2/20/25 ("Review [Opposing Party's] motion[s] . . . CL's Sentara medical records; call with [Mr. Ballard] re: strategy."). I acknowledge this is an instance of block-billing which, while not prohibited, is disfavored. Nonetheless, in my view this is another instance that can adequately be accounted for by the 15% reduction to the final lodestar figure, and time expended on the totality of the tasks is reasonable.

f.    Regarding the researching for, and drafting of, the First Notice of Supplementary Evidence and associated filings, I seek compensation for 3.9 hours. *See* Entries by Mr. Ballard dated 4/1/25; 4/2/25; and three entries dated 5/6/25. Ms. Bonfiglio seeks compensation for 1.8 hours. *See* Entries by Ms. Bonfiglio dated 4/1/25 and 4/2/25. In total, this amounts to 5.7 hours of time spent on communications with the client, drafting the brief, motion, notice, proposed order, and declaration, and communicating with opposing counsel to obtain their position on the same. In my view, this is reasonable. Of

note, I had to conduct some research to ensure it was appropriate to file a notice of supplementary evidence, as I had never had the need to do so. And it was a reasonable and appropriate strategy to expend time in alerting the Court to NRHA's noncompliance.

g.     With respect to the researching for, and drafting of, the Second Notice of Supplementary Evidence and associated filings, including the reply brief to NRHA's objection, I seek compensation for 4 hours. *See* Entries by Mr. Ballard dated 9/5/25 and 9/22/25. In my view this is reasonable.

h.     I seek compensation for the 0.6 hours expended on drafting correspondence and researching to respond to NRHA's premature discovery requests. *See* Entry by Mr. Ballard dated 9/10/25. *Moulvi v. Safety Holdings, Inc.*, No. 3:20-cv-595, 2021 WL 4494191, at *12 (E.D. Va. Sept. 30, 2021) ("A party receiving an early discovery request must respond in some manner even though the request is procedurally improper," and observing that absent agreement, moving for a protective order is appropriate (cleaned up)).

i.     Counsel seeks compensation for a total of 19.1 hours expended on preparing the instant brief and attachments in support of Ms. Mayrant's request for damages and attorney's fees and costs. *See* Entries dated 9/25/25 through 10/23/25. These activities are plainly compensable. *See, e.g.*, *Am. Canoe Ass'n, Inc. v. U.S. E.P.A.*, 138 F. Supp. 2d 722, 746 (E.D. Va. 2001) (time spent on fee petition is compensable (footnote omitted)). Of those hours expended, 4.8 hours are attributable to Ms. Bonfiglio. Of note, Ms. Bonfiglio expended some time requesting, and reviewing, medical records which counsel ultimately determined didn't provide additional context to this action, given that Ms. Mayrant doesn't discuss her trauma with others. But in my view, that time doesn't become compensable merely because counsel didn't utilize the records once they received them. If anything,

counsel had a duty to determine whether any medical records could support Ms. Mayrant's damages. To the extent the Court disagrees, the final adjustment to the lodestar figure accounts for it.

### C.    *Reasonableness of the hourly rates sought*

33.    I seek an hourly rate of $315, whereas Ms. Bonfiglio seeks an hourly rate of $415.

34.    For the reasons set forth more fully in the supporting brief, based upon my review of the cases in this district, as well as the applicable *Johnson* factors, I believe those rates fall within the range of what is reasonable in this district.

### D.    *No reduction is warranted, as there are no hours spent on unsuccessful or unrelated claims, and the degree of success obtained is significant.*

35.    For the reasons set forth more fully in the supporting brief, I do not believe a reduction is warranted for time spent on unsuccessful or unrelated claims, especially given the significant degree of success Ms. Mayrant has already obtained.

* * *

36.    **<u>Final Unadjusted Lodestar Figure</u>**: The total hours for which counsel seeks compensation is 80.1 hours. Of those hours, 20.6 hours are attributable to Ms. Bonfiglio, and 20.6 reasonable hours times her reasonable hourly rate of $415 equals $8,549.00. Next, my reasonable hours expended, 59.5 hours, times my reasonable hourly rate of $315 equals $18,742.50. Added together, then, the final unadjusted lodestar figure is **$27,291.50**.

37.    **<u>Final Adjusted Lodestar Figure</u>**: As set forth above and on brief, counsel believes it is appropriate to cut 15% from the unadjusted lodestar figure. Fifteen percent of the final unadjusted lodestar figure is $4093.73 (the actual unrounded figure is $4093.725). Consequently, the final lodestar figure, and the total reasonable attorney's fees award which counsel seeks, is **$23,197.77.**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

**10/23/2025**                    **/s/ Brandon L. Ballard**
**Date**                          **Brandon L. Ballard, Esq.**

# Exhibit A

# Time Records

| Date | Case Number | Reason | Time | Funds | Activity | CaseW | Snum |
|------|-------------|--------|------|-------|----------|-------|------|
| 10/8/2024 | 24E-1010847 | Draft and send email to NRHA re: no email communication and 9.27 inspe | 0.7 | 1 | A | | 241 |
| 10/10/2024 | 24E-1010847 | Call and texts with CL.  No one came today for the inspection.  Got notice | 0.3 | 1 | A | | 241 |
| 10/28/2024 | 24E-1010847 | Draft letter to NRHA. | 1 | 1 | A | | 241 |
| 10/31/2024 | 24E-1010847 | Revise and send RA follow up letter. | 1 | 1 | A | | 241 |
| 11/20/2024 | 24E-1010847 | CL received housekeeping inspection notice placed on her door; no email. | 0.3 | 1 | A | | 241 |
| 11/23/2024 | 24E-1010847 | Draft RA letter to OP re: December inspections. | 0.5 | 1 | A | | 241 |
| 11/26/2024 | 24E-1010847 | Finalize and send RA request re: inspections.  Discuss with CL. | 1.2 | 1 | A | | 241 |
| 12/7/2024 | 24E-1010847 | Texts and call from CL.  Got a GTA and an inspection notice for 12/9 toda | 0.3 | 1 | A | | 241 |
| 12/7/2024 | 24E-1010847 | Email S. Sermon and H. Ramthun re: GTA reschedule. | 0.2 | 1 | A | | 241 |
| 12/9/2024 | 24E-1010847 | Reviewed pics sent by CL - home is clean and ready for inspection.  4:20 | 0.3 | 1 | A | | 241 |
| 12/9/2024 | 24E-1010847 | Draft statement of facts (compl.) | 1 | 1 | A | | 241 |
| 12/10/2024 | 24E-1010847 | drafted compl. Revised stmt of facts; drafted causes of action; researched | 4 | 1 | A | | 200 |
| 12/10/2024 | 24E-1010847 | Review and discuss complaint with BB; call with CL to go through facts of | 1 | 1 | A | | 241 |
| 12/10/2024 | 24E-1010847 | Texts with CL re: inspection happening today; review pictures that CL sent | 0.3 | 1 | A | | 241 |
| 12/11/2024 | 24E-1010847 | | 0.2 | 1 | A | | 200 |
| 12/11/2024 | 24E-1010847 | In light of cl phone call, revise/add to stmt of facts in compl. | 1.6 | 1 | A | | 200 |
| 12/12/2024 | 24E-1010847 | | 3.7 | 1 | A | | 200 |
| 12/13/2024 | 24E-1010847 | labeling exhibits and redacting for filing | 1.2 | 1 | A | | 200 |
| 12/13/2024 | 24E-1010847 | review and revising compl. Research remedies under FHA and comparabl | 2.2 | 1 | A | | 200 |
| 12/13/2024 | 24E-1010847 | File compl. Prepared and filed proposed summons. Drafted notice of appe | 0.4 | 1 | A | | 200 |
| 12/16/2024 | 24E-1010847 | Arranged service of process | 0.9 | 1 | A | | 200 |
| 12/16/2024 | 24E-1010847 | | 0.2 | 1 | A | | 200 |
| 12/18/2024 | 24E-1010847 | Email to OC (DC and HR) re: GTA (grounds to appear) | 0.1 | 1 | A | | 241 |
| 1/6/2025 | 24E-1010847 | filed and formatted summons, executed, with court. Answer due 1/8/24. | 0.2 | 1 | A | | 200 |
| 1/9/2025 | 24E-1010847 | | 0.2 | 1 | A | | 200 |
| 1/9/2025 | 24E-1010847 | researched and drafted Request for Entry of Default | 1.1 | 1 | A | | 200 |
| 1/13/2025 | 24E-1010847 | Finalized and filed request for entry of default | 0.2 | 1 | A | FPL | 200 |
| 1/13/2025 | 24E-1010847 | drafting motion for default judgment. Resarch fhaa caselaw. Researching | 2 | 1 | A | | 200 |
| 1/21/2025 | 24E-1010847 | | 0.1 | 1 | A | | 200 |
| 1/27/2025 | 24E-1010847 | researching and synthesizing constructive denial + reasonableness prong | 1.1 | 1 | A | | 200 |
| 1/27/2025 | 24E-1010847 | drafting liability section of motion for default judgment | 0.6 | 1 | A | | 200 |
| 1/27/2025 | 24E-1010847 | drafting liability portion of motion for default judgment | 0.7 | 1 | A | | 200 |
| 1/30/2025 | 24E-1010847 | Early morning texts from CL - just found rent statement from NRHA sayin | 2 | 1 | A | | 241 |
| 1/30/2025 | 24E-1010847 | research on permissibility of punitive damages under FHA. | 0.6 | 1 | A | | 200 |
| 2/2/2025 | 24E-1010847 | Review and comment on brief in support of motion for default judgment. | 0.8 | 1 | A | | 241 |
| 2/3/2025 | 24E-1010847 | drafted declaration. Reviewed with client. Sent to Client through DocuSign | 1.8 | 1 | A | | 200 |
| 2/3/2025 | 24E-1010847 | drafted brief in support of motion for preliminary injunction | 2 | 1 | A | | 200 |
| 2/3/2025 | 24E-1010847 | drafting preliminary injunction motion, and revising brief in support thereof, | 1 | 1 | A | | 200 |
| 2/3/2025 | 24E-1010847 | Review declaration with CL; revise and edit; discussions with BB; review c | 1.2 | 1 | A | | 241 |
| 2/4/2025 | 24E-1010847 | research comparable FHA cases; more writing re: compensatory damage | 2.2 | 1 | A | | 200 |
| 2/4/2025 | 24E-1010847 | rv'd injunction caselaw, especially in FHA context; drafted preliminary inju | 0.6 | 1 | A | | 200 |
| 2/4/2025 | 24E-1010847 | finalize/revise motions and briefs and exhibits for preliminary injunction an | 1.1 | 1 | A | | 200 |
| 2/4/2025 | 24E-1010847 | Review and edit brief for def. judgment | 1 | 1 | A | | 241 |
| 2/5/2025 | 24E-1010847 | Review and edit PI and default judgment briefs. | 1 | 1 | A | | 241 |
| 2/5/2025 | 24E-1010847 | Finalze preliminary injunction motion, brief support thereof, motion for def | 2 | 1 | A | | 200 |
| 2/6/2025 | 24E-1010847 | Received and rv'd email from process server. Drafted Notice of certificate | 0.3 | 1 | A | | 200 |
| 2/6/2025 | 24E-1010847 | Neighbors noise complaints - calls and texts with CL; f/u email to OC re s | 1.2 | 1 | A | | 241 |
| 2/20/2025 | 24E-1010847 | Review OP's motion for leave to file answer; answer; motion for relief from | 1.5 | 1 | A | | 241 |
| 2/22/2025 | 24E-1010847 | Review prior medical records in anticipation of discovery; email to BB re: s | 0.5 | 1 | A | | 241 |
| 2/24/2025 | 24E-1010847 | rv'd OC filings (ECF No. 14, 15, 16) | 0.4 | 1 | A | | 200 |
| 2/24/2025 | 24E-1010847 | resarched EDVA and Fourth Circuit caselaw on good cause standard und | 2.1 | 1 | A | | 200 |

| Date | Matter | Description | Time | | | | |
|---|---|---|---|---|---|---|---|
| 2/24/2025 | 24E-1010847 | drafting reply brief (intro, legal standard, start on meritorus defense sectio | 2 | 1 | A | | 200 |
| 2/24/2025 | 24E-1010847 | reviewed NRHA's answer and drafted meritorious defense/less drastic alte | 2.5 | 1 | A | | 200 |
| 2/25/2025 | 24E-1010847 | drafted, background, intro,and part II of Argument for brief in opp. To set a | 1.5 | 1 | A | | 200 |
| 2/25/2025 | 24E-1010847 | drafted section on personal responsbility and reasonable promptness fact | 0.7 | 1 | A | | 200 |
| 2/25/2025 | 24E-1010847 | drafted and researched prejudice factor for reply br to mot. To set aside d | 0.4 | 1 | A | | 200 |
| 2/26/2025 | 24E-1010847 | proofread reply brief for filing; prepared exhibit A for filing (redacted; labele | 0.4 | 1 | A | | 200 |
| 2/26/2025 | 24E-1010847 | filing pleadings | 0.3 | 1 | A | | 200 |
| 2/27/2025 | 24E-1010847 | drafted + sent email to opposing counsel regarding phone call/court hearin | 0.1 | 1 | A | OTH | 200 |
| 3/4/2025 | 24E-1010847 | revised notice of submission in light of OC's 3.4.25 reply to my email. Em | 0.2 | 1 | A | | 200 |
| 3/26/2025 | 24E-1010847 | CL's house; picked up packet (recert docs) left on her door and found by | 1 | 1 | A | | 241 |
| 3/27/2025 | 24E-1010847 | Email CL re: tenant meeting. | 0.2 | 1 | A | | 241 |
| 4/1/2025 | 24E-1010847 | Call with CL re: incident at Watergate today; draft letter to OC. | 1.4 | 1 | A | | 241 |
| 4/1/2025 | 24E-1010847 | drafted and provided to MB for review of Notice to supplement record re: | 2 | 1 | A | | 200 |
| 4/1/2025 | 24E-1010847 | Draft declaration; review motion for leave to file supplement. | 1 | 1 | A | | 241 |
| 4/2/2025 | 24E-1010847 | redacted and labeled exhibits for filing of notice of noncompliance. | 0.7 | 1 | A | | 200 |
| 4/2/2025 | 24E-1010847 | Call with CL. Reviewed declaration and made edits.  Sent to CL via Docu | 0.8 | 1 | A | | 241 |
| 4/3/2025 | 24E-1010847 | Call with CL; locks changed; very upset - two maintenance men and Kare | 0.6 | 1 | A | | 241 |
| 5/2/2025 | 24E-1010847 | Texts and calls with CL re: issues with PCA/Paulette/V and Y christian car | 0.8 | 1 | A | | 241 |
| 5/5/2025 | 24E-1010847 | Call with CL.  Incident at Watergate yesterday with ▮▮▮▮ and a guy who | 0.5 | 1 | A | | 241 |
| 5/6/2025 | 24E-1010847 | revising notice/motion/brief to supplement record based on new developm | 0.5 | 1 | A | DRD | 200 |
| 5/6/2025 | 24E-1010847 | drafted proposed order for notice of supp. Evidence | 0.2 | 1 | A | DRD | 200 |
| 5/6/2025 | 24E-1010847 | filing Mot. To supp./accompanying documentation | 0.5 | 1 | A | FPL | 200 |
| 5/21/2025 | 24E-1010847 | Email to OC re: recertification and noise complaints. | 0.2 | 1 | A | | 241 |
| 7/10/2025 | 24E-1010847 | Call with CL; WR to pick up rent statement received by mail; review and di | 0.4 | 1 | A | | 241 |
| 7/22/2025 | 24E-1010847 | Calls with CL and WR.  Need to respond to KC and maintenance appt; CL | 0.8 | 1 | A | | 241 |
| 9/5/2025 | 24E-1010847 | drafted and prepared for filing second notice of supp. Evidence, brief in su | 2 | 1 | A | | 200 |
| 9/10/2025 | 24E-1010847 | research re: premature discovery requests in light of receipt of OC's disco | 0.6 | 1 | A | | 200 |
| 9/22/2025 | 24E-1010847 | drafting and finalizing reply brief to NRHA's objection to 2nd notice of supp | 2 | 1 | A | | 200 |
| 9/22/2025 | 24E-1010847 | Call with CL. | 0.8 | 1 | A | | 241 |
| 9/25/2025 | 24E-1010847 | Draft email and draft declaration re: atty fees; provide foregoing to Helen | 0.8 | 1 | A | | 200 |
| 9/25/2025 | 24E-1010847 | Medical records requests - Family insight and Integrated Health; review S | 0.8 | 1 | A | | 241 |
| 10/2/2025 | 24E-1010847 | Review FHA caselaw on proving compensatory damages | 1.5 | 1 | A | | 200 |
| 10/2/2025 | 24E-1010847 | Research and draft section on pre- and post-judgment interest; basis for a | 0.7 | 1 | A | | 200 |
| 10/2/2025 | 24E-1010847 | research and draft section on prevailing party caselaw | 0.4 | 1 | A | | 200 |
| 10/2/2025 | 24E-1010847 | research on costs - split of authority on private process; draft brief section | 0.5 | 1 | A | | 200 |
| 10/4/2025 | 24E-1010847 | Follow up on records requests made to Family Insight and Dr. Mouzon. | 0.2 | 1 | A | | 241 |
| 10/13/2025 | 24E-1010847 | rv'd time records in exercise of billing discretion (e.g. discount incomplete | 0.6 | 1 | A | | 200 |
| 10/13/2025 | 24E-1010847 | research re: atty fees; rv'd filings in other case to determine appropriate fo | 2.2 | 1 | A | | 200 |
| 10/14/2025 | 24E-1010847 | conference with co-counsel to discuss progress of damages/remedies bri | 0.3 | 1 | A | | 200 |
| 10/14/2025 | 24E-1010847 | drafting attorney fee section (research on comparable cases with similar | 0.8 | 1 | A | | 200 |
| 10/14/2025 | 24E-1010847 | searched westlaw for comparable cases in support of reasonable hourly r | 1.4 | 1 | A | | 200 |
| 10/15/2025 | 24E-1010847 | conferred with Megan Marmottin about need for declaration, provided tem | 0.3 | 1 | A | | 200 |
| 10/15/2025 | 24E-1010847 | revise my attorney fee affidavit | 1.9 | 1 | A | | 200 |
| 10/15/2025 | 24E-1010847 | finalizing my declaration | 1.2 | 1 | A | | 200 |
| 10/21/2025 | 24E-1010847 | Draft declaration of Jasmine Mayrant; multiple calls with CL; meeting with | 3.8 | 1 | A | | 241 |
| 10/23/2025 | 24E-1010847 | revising and researching compensatory damages portion of brief in supp. | 1.2 | 1 | A | | 200 |
| 10/23/2025 | 24E-1010847 | final research, revising, on punitive damages portion of brief. | 0.5 | 1 | A | | 200 |

Sum of Time: 96.30

**Exhibit B**

| Case Number | Date | Staff | REASON | Time |
|---|---|---|---|---|
| 24E-1010847 | 10/8/2024 | 241 | Draft and send email to NRHA re: no email communication and 9.27 inspection notice. | 0.7 |
| 24E-1010847 | 10/10/2024 | 241 | Call and texts with CL.  No one came today for the inspection.  Got notice from new PM and got lease cancellation notice for $4. | 0.3 |
| 24E-1010847 | 10/28/2024 | 241 | Draft letter to NRHA. | 1 |
| 24E-1010847 | 10/31/2024 | 241 | Revise and send RA follow up letter. | 1 |
| 24E-1010847 | 11/20/2024 | 241 | CL received housekeeping inspection notice placed on her door; no email.  Email to PM re: Cox drilling. | 0.3 |
| 24E-1010847 | 11/23/2024 | 241 | Draft RA letter to OP re: December inspections. | 0.5 |
| 24E-1010847 | 11/26/2024 | 241 | Finalize and send RA request re: inspections.  Discuss with CL. | 1.2 |
| 24E-1010847 | 12/7/2024 | 241 | Texts and call from CL.  Got a GTA and an inspection notice for 12/9 today.  OK with inspection on 12/9 - cleaning this weekend. Ready to go ahead and sue NRHA for FHA violations. | 0.3 |
| 24E-1010847 | 12/7/2024 | 241 | Email S. Sermon and H. Ramthun re: GTA reschedule. | 0.2 |
| 24E-1010847 | 12/9/2024 | 241 | Reviewed pics sent by CL - home is clean and ready for inspection.  4:20 call - 3 maintenance guys came by on cart but did not come into unit.  CL didn't talk to them but she had door and gate open and they looked back and her and went to the next unit. | 0.3 |
| 24E-1010847 | 12/9/2024 | 241 | Draft statement of facts (compl.) | 1 |
| 24E-1010847 | 12/10/2024 | 200 | drafted compl. Revised stmt of facts; drafted causes of action; researched basis for disparate treatment and failure-to-accommodate claims | 4 |
| 24E-1010847 | 12/10/2024 | 241 | Review and discuss complaint with BB; call with CL to go through facts of the complaint. | 1 |
| 24E-1010847 | 12/10/2024 | 241 | Texts with CL re: inspection happening today; review pictures that CL sent. | 0.3 |
| 24E-1010847 | 12/11/2024 | 200 | | 0.2 |
| 24E-1010847 | 12/11/2024 | 200 | In light of cl phone call, revise/add to stmt of facts in compl. | 1.6 |
| 24E-1010847 | 12/12/2024 | 200 | | 3.7 |
| 24E-1010847 | 12/13/2024 | 200 | labeling exhibits and redacting for filing | 1.2 |
| 24E-1010847 | 12/13/2024 | 200 | review and revising compl. Research remedies under FHA and comparable cases. | 2.2 |
| 24E-1010847 | 12/13/2024 | 200 | File compl. Prepared and filed proposed summons. Drafted notice of apperance for MB | 0.4 |
| 24E-1010847 | 12/16/2024 | 200 | Arranged service of process | 0.9 |
| 24E-1010847 | 12/16/2024 | 200 | | 0.2 |
| 24E-1010847 | 12/18/2024 | 241 | Email to OC (DC and HR) re: GTA (grounds to appear) | 0.1 |
| 24E-1010847 | 1/6/2025 | 200 | filed and formatted summons, executed, with court. Answer due 1/8/24. | 0.2 |
| 24E-1010847 | 1/9/2025 | 200 | | 0.2 |
| 24E-1010847 | 1/9/2025 | 200 | researched and drafted Request for Entry of Default | 1.1 |
| 24E-1010847 | 1/13/2025 | 200 | Finalized and filed request for entry of default | 0.2 |
| 24E-1010847 | 1/13/2025 | 200 | drafting motion for default judgment. Resarch fhaa caselaw. Researching standards for obtaining default judgment for non-liquidated damages | 2 |
| 24E-1010847 | 1/21/2025 | 200 | | 0.1 |
| 24E-1010847 | 1/27/2025 | 200 | researching and synthesizing constructive denial + reasonableness prong of failure-to-accommodate caselaw under FHA and other civil rights laws. | 1.1 |
| 24E-1010847 | 1/27/2025 | 200 | drafting liability section of motion for default judgment | 0.6 |
| 24E-1010847 | 1/27/2025 | 200 | drafting liability portion of motion for default judgment | 0.7 |
| 24E-1010847 | 1/30/2025 | 241 | Early morning texts from CL - just found rent statement from NRHA saying she owes Jan and Feb rent; CL very upset and stressed. Went to CL's house - got hard copies of statement and December 2024 statement. | 2 |
| 24E-1010847 | 1/30/2025 | 200 | research on permissibility of punitive damages under FHA. | 0.6 |
| 24E-1010847 | 2/2/2025 | 241 | Review and comment on brief in support of motion for default judgment. | 0.8 |
| 24E-1010847 | 2/3/2025 | 200 | drafted declaration. Reviewed with client. Sent to Client through DocuSign for Her to Sign. | 1.8 |
| 24E-1010847 | 2/3/2025 | 200 | drafted brief in support of motion for preliminary injunction | 2 |
| 24E-1010847 | 2/3/2025 | 200 | drafting preliminary injunction motion, and revising brief in support thereof, with particular focus on irreparable harm, public interest, balance of harms factors | 1 |
| 24E-1010847 | 2/3/2025 | 241 | Review declaration with CL; revise and edit; discussions with BB; review case law. | 1.2 |
| 24E-1010847 | 2/4/2025 | 200 | research comparable FHA cases; more writing re: compensatory damages and revising stmt of facts in both briefs | 2.2 |
| 24E-1010847 | 2/4/2025 | 200 | rv'd injunction caselaw, especially in FHA context; drafted preliminary injunction order | 0.6 |
| 24E-1010847 | 2/4/2025 | 200 | finalize/revise motions and briefs and exhibits for preliminary injunction and def. judgment | 1.1 |
| 24E-1010847 | 2/4/2025 | 241 | Review and edit brief for def. judgment | 1 |
| 24E-1010847 | 2/5/2025 | 241 | Review and edit PI and default judgment briefs. | 1 |
| 24E-1010847 | 2/5/2025 | 200 | Finalze preliminary injunction motion, brief support thereof, motion for default, brief in support thereof, exhibits, proposed order, in light of MB comments/revisions. File. | 2 |
| 24E-1010847 | 2/6/2025 | 200 | Received and rv'd email from process server. Drafted Notice of certificate of service. Saved email to NRHA general counsel as exhibit. Filed foregoing. | 0.3 |
| 24E-1010847 | 2/6/2025 | 241 | Neighbors noise complaints - calls and texts with CL; f/u email to OC re same. | 1.2 |
| 24E-1010847 | 2/20/2025 | 241 | Review OP's motion for leave to file answer; answer; motion for relief from default; CL's Sentara medical records; call with BB re: strategy. | 1.5 |
| 24E-1010847 | 2/22/2025 | 241 | Review prior medical records in anticipation of discovery; email to BB re: same; prepare updated medical release to get new records. | 0.5 |

| | | | | |
|---|---|---|---|---|
| 24E-1010847 | 2/24/2025 | 200 | rv'd OC filings (ECF No. 14, 15, 16) | 0.4 |
| 24E-1010847 | 2/24/2025 | 200 | resarched EDVA and Fourth Circuit caselaw on good cause standard under federal rule 55(c). | 2.1 |
| 24E-1010847 | 2/24/2025 | 200 | drafting reply brief (intro, legal standard, start on meritous defense section) | 2 |
| 24E-1010847 | 2/24/2025 | 200 | reviewed NRHA's answer and drafted meritorious defense/less drastic alternatives sections | 2.5 |
| 24E-1010847 | 2/25/2025 | 200 | drafted, background, intro,and part II of Argument for brief in opp. To set aside default. | 1.5 |
| 24E-1010847 | 2/25/2025 | 200 | drafted section on personal responsbility and reasonable promptness factor (reply br. To mot. To vacate) | 0.7 |
| 24E-1010847 | 2/25/2025 | 200 | drafted and researched prejudice factor for reply br to mot. To set aside default | 0.4 |
| 24E-1010847 | 2/26/2025 | 200 | proofread reply brief for filing; prepared exhibit A for filing (redacted; labeled). | 0.4 |
| 24E-1010847 | 2/26/2025 | 200 | filing pleadings | 0.3 |
| 24E-1010847 | 2/27/2025 | 200 | drafted + sent email to opposing counsel regarding phone call/court hearing | 0.1 |
| 24E-1010847 | 3/4/2025 | 200 | revised notice of submission in light of OC's 3.4.25 reply to my email. Emailed draft to OC for their review. | 0.2 |
| 24E-1010847 | 3/26/2025 | 241 | CL's house; picked up packet (recert docs) left on her door and found by ███████. Need to have Welton assist her in paying.  Paid April rent online at rentpayment.com; needs to figure out laundry. | 1 |
| 24E-1010847 | 3/27/2025 | 241 | Email CL re: tenant meeting. | 0.2 |
| 24E-1010847 | 4/1/2025 | 241 | Call with CL re: incident at Watergate today; draft letter to OC. | 1.4 |
| 24E-1010847 | 4/1/2025 | 241 | drafted and provided to MB for review of Notice to supplement record re: NRHA noncompliance; researched peretinent caselaw. Rv'd NRHA communications to Mayrant. | 2 |
| 24E-1010847 | 4/1/2025 | 241 | Draft declaration; review motion for leave to file supplement. | 1 |
| 24E-1010847 | 4/2/2025 | 200 | redacted and labeled exhibits for filing of notice of noncompliance. | 0.7 |
| 24E-1010847 | 4/2/2025 | 241 | Call with CL.  Reviewed declaration and made edits.  Sent to CL via Docusign | 0.8 |
| 24E-1010847 | 4/3/2025 | 241 | Call with CL; locks changed; very upset - two maintenance men and Karen Campos - barged in; email to OC with new RA. | 0.6 |
| 24E-1010847 | 5/2/2025 | 241 | Texts and calls with CL re: issues with PCA/Paulette/V and Y christian care.  Faxed letter to Y Christian Care. | 0.8 |
| 24E-1010847 | 5/5/2025 | 241 | Call with CL.  Incident at Watergate yesterday with ████████████████████████████████████████████████████████. | 0.5 |
| 24E-1010847 | 5/6/2025 | 200 | revising notice/motion/brief to supplement record based on new developments. Emailed OC, confirming I would note opposition and file foregoing today. | 0.5 |
| 24E-1010847 | 5/6/2025 | 200 | drafted proposed order for notice of supp. Evidence | 0.2 |
| 24E-1010847 | 5/6/2025 | 200 | filing Mot. To supp./accompanying documentation | 0.5 |
| 24E-1010847 | 5/21/2025 | 241 | Email to OC re: recertification and noise complaints. | 0.2 |
| 24E-1010847 | 7/10/2025 | 241 | Call with CL; WR to pick up rent statement received by mail; review and discuss with BB.  July rent statement mailed to CL - postage says 6/30/25. | 0.4 |
| 24E-1010847 | 7/22/2025 | 241 | Calls with CL and WR.  Need to respond to KC and maintenance appt; CL going to YT resident meeting with me on Thurs; staying with integrated health for ████ | 0.8 |
| 24E-1010847 | 9/5/2025 | 200 | drafted and prepared for filing second notice of supp. Evidence, brief in support thereof, exhibits, decl., and proposed order | 2 |
| 24E-1010847 | 9/10/2025 | 200 | research re: premature discovery requests in light of receipt of OC's discovery requests. Drafted lttr in response. | 0.6 |
| 24E-1010847 | 9/22/2025 | 200 | drafting and finalizing reply brief to NRHA's objection to 2nd notice of supp. Evidence | 2 |
| 24E-1010847 | 9/22/2025 | 241 | Call with CL. | 0.8 |
| 24E-1010847 | 9/25/2025 | 200 | Draft email and draft declaration re: atty fees; provide foregoing to Helen Hardiman. | 0.8 |
| 24E-1010847 | 9/25/2025 | 241 | Medical records requests - Family insight and Integrated Health; review Sentara mychart. | 0.8 |
| 24E-1010847 | 10/2/2025 | 200 | Review FHA caselaw on proving compensatory damages | 1.5 |
| 24E-1010847 | 10/2/2025 | 200 | Research and draft section on pre- and post-judgment interest; basis for atty fees for legal aid attorneys | 0.7 |
| 24E-1010847 | 10/2/2025 | 200 | research and draft section on prevailing party caselaw | 0.4 |
| 24E-1010847 | 10/2/2025 | 200 | research on costs - split of authority on private process; draft brief section on the same | 0.5 |
| 24E-1010847 | 10/4/2025 | 241 | Follow up on records requests made to Family Insight and Dr. Mouzon. | 0.2 |
| 24E-1010847 | 10/13/2025 | 200 | rv'd time records in exercise of billing discretion (e.g. discount incomplete entries; flag potential entries for MB review that aren't directly related to this case) | 0.6 |
| 24E-1010847 | 10/13/2025 | 200 | research re: atty fees; rv'd filings in other case to determine appropriate format for declarations, time records, and the like. | 2.2 |
| 24E-1010847 | 10/14/2025 | 200 | conference with co-counsel to discuss progress of damages/remedies brief; next steps; expected timelines. | 0.3 |
| 24E-1010847 | 10/14/2025 | 200 | drafting attorney fee section (research on comparable cases with similar market rates requested). | 0.8 |
| 24E-1010847 | 10/14/2025 | 200 | searched westlaw for comparable cases in support of reasonable hourly rates sought. | 1.4 |
| 24E-1010847 | 10/15/2025 | 200 | conferred with Megan Marmottin about need for declaration, provided template declaration for her to work with | 0.3 |
| 24E-1010847 | 10/15/2025 | 200 | revise my attorney fee affidavit | 1.9 |
| 24E-1010847 | 10/15/2025 | 200 | finalizing my declaration | 1.2 |
| 24E-1010847 | 10/21/2025 | 241 | Draft declaration of Jasmine Mayrant; multiple calls with CL; meeting with CL for her to review and sign declaration. | 3.8 |
| 24E-1010847 | 10/23/2025 | 200 | revising and researching compensatory damages portion of brief in supp. Of dmgs/atty fees | 1.2 |
| 24E-1010847 | 10/23/2025 | 200 | final research, revising, on punitive damages portion of brief. | 0.5 |
| | | | Total Time: | 96.3 |