UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JASMINE MAYRANT,<br><br>   Plaintiff,<br>v.<br><br>NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY, a political subdivision of the Commonwealth,<br><br>   Defendant. | Civil No.: 2:24-cv-715 |

**DECLARATION OF MELISSA B. BONFIGLIO, ESQ.**

I, Melissa B. Bonfiglio, Esq., declare as follows:

1. My name is Melissa B. Bonfiglio, Esq. I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2. I, along with Mr. Brandon Ballard, Esq., represent the Plaintiff in this matter. We are employed by the Legal Aid Society of Eastern Virginia ("LASEV"). Founded in 1966, LASEV is a non-profit law firm that provides representation in civil matters to the low-income individuals of Hampton Roads and parts of the Eastern Shore. LASEV strives to both meet the individual legal needs of its clients and to challenge systemic injustice and the root causes of poverty and inequality. *See* LASEV, https://laseva.org/about/. I am the Director of Litigation and Deputy Director at LASEV.

3. At this time, counsel seeks $23,197.77 in attorney's fees and $501.50 in costs. The latter represents expenses incurred for the filing fee and service of process. A true and accurate

copy of the two (2) invoices is attached to the brief. *See* ECF 31-6. The award should be made out to LASEV rather than to Ms. Bonfiglio or Mr. Ballard.

4. LASEV uses "Kemp's Case Works" ("Kemps"), which is a legal case management software that, *inter alia*, allows its users to contemporaneously track time spent on each client's case and record the tasks performed during that period. Each case is assigned a unique case number.

5. This matter's case number is 24E-1010847.

6. Each attorney at LASEV has a unique staff number. Mr. Ballard's staff number is 200. My staff number is 241. Each entry in Kemps notates the attorney who performed the work by providing the attorney's staff number.

7. Attached to Mr. Ballard's declaration is **Exhibit A**. Exhibit A constitutes the contemporaneous time records downloaded from Kemps. I have reviewed Exhibit A closely. I can confirm that no alterations were made (other than the phrase affixed to the top of the document entitled, "Exhibit A"), and that it is a true and accurate copy thereof. There are a few entries that are redacted because they mention a minor's name or contain sensitive information. Counsel does not seek compensation for those entries. *See* Ballard Decl. ¶ 30, ECF No. 31-1.

8. Also attached to Mr. Ballard's declaration as **Exhibit B** is a true and accurate copy of an Excel spreadsheet of the time records for this matter. This was necessary because the time records downloaded from Kemps do not show the entire description of the task performed for entries of a certain length. Rather, the description in those instances are cut off. LASEV's Community Support Specialist, Megan Marmottin, describes how she exported the information from Kemps to Excel, and avers that no entries were altered. I can confirm that, upon review, no entries were altered, and it is a true and accurate copy of the time entries in Kemps. Both

Exhibits A and B are provided to the Court and opposing counsel to demonstrate this fact. The same entries redacted in Exhibit A are also redacted in Exhibit B.

**A.**     ***Ms. Bonfiglio's Experience***

9. In 2002, I graduated from the University of California at Los Angeles School of Law.

10. I am in good standing and licensed to practice in Virginia, the United States District Court for the Eastern District of Virginia, the United States Bankruptcy Court for the Eastern District of Virginia, the United States Court of Appeals for the Fourth Circuit, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, and the United States Court of Appeals for the Ninth Circuit. I am licensed to practice in California, but I am currently inactive.

11. Between 2002 and 2006, I was employed by Bryan Cave LLP. Between 2006 and 2009, I was employed by Eisenberg Raizman Thurston & Wong LLP. At both firms, my practice consisted of state and federal litigation concerning commercial and intellectual property disputes. *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006); *ASICS Corp. v. Wanted Shoes, Inc.*, No. SACV04-1261, 2005 WL 1691587 (C.D. Cal. Jan. 25, 2005); *Doe v. Barnes & Noble, Inc.*, No. SACV 07-1181, 2007 WL 10130107 (C.D. Cal. Nov. 19, 2007); *Farm Sanctuary, Inc. v. Corcpork, Inc.*, No. B186729, 2007 WL 196514 (Cal. Ct. App. Jan. 26, 2007). Between 2009 and 2015, I took a break from the practice of law to attend to my family.

12. Since 2015, I have been employed as an attorney at LASEV. Since 2019, I have been a managing attorney for LASEV, and have managed both LASEV's Hampton/Williamsburg offices as well as our Norfolk/Eastern Shore offices.

13. Effective July 1, 2025, I was promoted to the Director of Litigation/Deputy Director at LASEV. In this role, I manage LASEV's Community Support Team and oversee complex/impact litigation in state and federal courts on behalf of low-income individuals. The only other attorney in my unit, "the Strategic Litigation and Community Support Team," is Mr. Ballard. *See* LASEV, https://laseva.org/about/meet-the-team/. The other persons in our unit are "community support specialists." They are neither trained as paralegals nor office assistants. Rather, they largely conduct intake applications and community outreach. In fact, our unit doesn't employ a paralegal or office assistant dedicated to assisting us with the day-to-day tasks of litigation, such as the drafting of correspondence, discovery, or filing of pleadings. Based upon my over a decade experience as a legal aid attorney, in which I have the continuous opportunity to interact with legal aid organization in Virginia and across the nation, this is not uncommon for a legal aid organization with the limited funding and the restrictions that come along with it. Moreover, Mr. Ballard and I are currently the only attorneys at LASEV that appear with some frequency in federal court, and we are the only attorneys who regularly practice in bankruptcy court. The one exception is a LASEV attorney in our Disability Rights Unit who at times litigates social security matters in federal district court.

14. During my time at LASEV, I have litigated matters in state and federal court ranging from bankruptcy, family law, child protection service matters, consumer law, housing, civil rights, public benefits, social security, and fair housing law.

15. I have experience litigating claims in this Court. For example, in *Minnesota Life Insurance v. Alexander et. al.*, Civil No. 2:22-cv-00207 (E.D. Va. May 16, 2022), an interpleader dispute over life insurance proceeds, Mr. Ballard and I obtained $34,200.00 for

our indigent client by way of a favorable settlement. We litigated the case up until the eve of trial. The case resulted in several decisions which are reported on Westlaw. *Minn. Life. Ins. Co. v. Alexander*, 694 F.Supp.3d 733 (E.D. Va. Sept. 25, 2023); *Minnesota Life Ins. Co. v. Alexander*, 694 F. Supp. 3d 742 (E.D. Va. 2023); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4648083 (E.D. Va. Nov. 1, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4691008 (E.D. Va. Nov. 6, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4723355 (E.D. Va. Nov. 7, 2024); *Minnesota Life Ins. Co. v. Alexander*, No. 2:22-cv-207, 2024 WL 4679137 (E.D. Va. Nov. 4, 2024). In that case, we conducted extensive discovery (*e.g.* depositions), filed motions *in limine* and a summary judgment motion based upon a voluminous record, and retained and successfully defended the admissibility of an expert's testimony.

16. I also have experience with litigating civil rights actions in this Court. For example, in *Elliott v. Norfolk Redevelopment and Housing Authority*, 2:24-cv-00558 (E.D. Va. 2024), Mr. Ballard and I brought Section 1983 claims on behalf of a public housing resident under the due process clause and National Housing Act, alleging the housing authority had a custom, pattern, or practice of failing to inform residents of the hardship exemption to the minimum rent. The case resulted in a favorable settlement that benefited residents other than the named Plaintiff. For example, the housing authority agreed to change the manner in which it notified public housing residents of the hardship exemption to the minimum rent, to not modify the revised forms absent a good-faith reason and opportunity for plaintiff's counsel to respond, and to notify all public housing residents of the changes.

17. Presently, Mr. Ballard and I have two other civil rights actions pending in this Court. *Harris v. Newport New Redevelopment and Housing Authority*, Civil No. 4:25-cv-

00108 (E.D. Va. 2025) (alleging violations of due process and free speech clauses); *Williams v. Newport News Redevelopment and Housing Authority et. al.*, Civil No. 4:25-cv-00116 (E.D. Va. 2025) (alleging violations of due process clause and bringing common law claims of defamation and breach of contract against private defendant).

18. I also have experience litigating consumer protection matters in this Court. In *Powell v. Wilmington Savings Fun Society, FBS, et. al.*, 2:24-cv-00541 (E.D. Va. 2024), Mr. Ballard, the law firm of Kelly Guzzo, and I brought claims under the common law and the Real Estate Settlement Practices Act in a so-called "zombie mortgage" case; the matter resulted in a settlement wherein the mortgage company agreed to rescind the foreclosure sale and mark the mortgage as satisfied. More recently, Mr. Ballard and I filed an adversary proceeding against HUD and mortgage companies, alleging violations of the Administrative Procedure Act; fraud; and seeking reformation of the client's reverse mortgage. *Evelyn Bannister Sample et. al. v. United States Department of Housing and Urban Development et. al.*, Case No.: 25-07034-SCS (Bankr. E.D. Va. 2025). The case is still pending.

19. In all, given my seven-year or so experience as a "big law" attorney and over a decade experience as a legal aid attorney, I have considerable experience in all aspects of federal and state litigation.

20. Moreover, my experience as a legal aid attorney gives me unique insight into the federal statutes and regulations that often form the background of federal civil rights actions, such as the instant action, that Mr. Ballard and I bring against landlords and housing authorities. My experience also gives me unique insight into the eviction process and how state and federal claims can be implicated by them. To my knowledge, no local attorney in the Hampton Roads region regularly litigates FHA claims, particularly for the communities we serve. Nor do I

believe there are many local attorneys (other than attorneys who represent landlords) who have an innate understanding of the public housing statutes and regulations that form the backdrop of this action.

### B. *Reasonableness of Hourly Rate and Time Expended*

21. I am familiar with the Fourth Circuit's three-step framework for ascertaining the reasonableness of fee awards. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). I am also familiar with, and take seriously, the Supreme Court's admonition to exercise voluntary billing judgment in these matters.

22. Regarding the reasonableness of the hours for which Mr. Ballard and I seek compensation for, I have independently reviewed Mr. Ballard's declaration and the calculations and exclusions set forth therein. Based upon my experience, the hours for which we seek compensation are reasonable. I do, however, make three observations:

   a. First, regarding the entry dated 2/20/25, I agree with Mr. Ballard that this is an instance of block-billing which, while not prohibited, is disfavored. I agree with Mr. Ballard that the 15% reduction to the final lodestar figure accounts for this entry.

   b. Second, I have known and represented Ms. Mayrant in various matters for several years. The cases in which I have successfully represented Ms. Mayrant include a divorce proceeding, custody matter, unlawful detainer, and child protective services matter. Given Ms. Mayrant's traumatic history, she is reluctant to trust people and confides in very few people. This is why I have been the primary point of contact with Ms. Mayrant. I believe this fact also supports my requested hourly rate.

   c. Third, as shown by the time records, neither Mr. Ballard nor I duplicated the other's work.

23. Regarding the reasonableness of the hourly rates, I have independently reviewed the *Johnson* factors and case law set forth in the supporting brief. Based upon the foregoing, I believe the hourly rates for which Mr. Ballard and I seek compensation are reasonable.

24. For the reasons set forth more fully in the supporting brief, I do not believe a reduction is warranted for time spent on unsuccessful or unrelated claims, especially given the significant degree of success already obtained.

25. Finally, I have reviewed the adjusted and unadjusted lodestar calculations set forth in Mr. Ballard's brief and believe them to be true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**10/23/2025**   **/s/ Melissa B. Bonfiglio**
**Date**                **Melissa B. Bonfiglio, Esq.**