UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JASMINE MAYRANT,<br><br>        Plaintiff,<br>v.<br><br>NORFOLK REDEVELOPMENT AND<br>HOUSING AUTHORITY, a political<br>subdivision of the Commonwealth,<br><br>        Defendant. | Civil No.: 2:24-cv-715 |

## DECLARATION OF JASMINE MAYRANT

I, Ms. Jasmine Mayrant, declare as follows:

    1.    My name is Ms. Jasmine Mayrant, and I am over 21 years of age, of sound mind, and capable of executing this declaration.

    2.    I am a single mother of two minor children. My daughter is nine years old, and my son is eight years old.

    3.    As stated in previous declarations, I am legally blind. I am completely blind in one eye, and while I used to have a vision of 20/600, it has gotten worse. I cannot read hard copy documents in regular font. I used to be able to read documents that were sent to me electronically, but that is becoming more difficult. I cannot see envelopes that come in through my mail slot or notices that are posted on my door. I can no longer navigate through websites and social media for information. I have been diagnosed with depression, anxiety, insomnia and post-traumatic stress disorder.

    4.    Prior to moving into one of NRHA's public housing units in June 2024, housing had been a significant challenge for me. My income has always been limited because of my

1

disability. I receive Supplemental Security Income ("SSI") and because there are not many affordable and habitable rental units in Norfolk, it has historically been difficult for me to find appropriate housing. I have been both housing unstable and homeless as an adult. In 2021 and 2022, I lived in a rental house in Norfolk. My landlord was a slumlord and refused to fix problems in the home. However, because of my limited income, I couldn't just move to a better place. Despite the fact that I made multiple complaints about electrical issues, my landlord didn't fix anything. In the summer of 2022, there was an electrical fire. I was hospitalized and the home was condemned. After being discharged from the hospital, I could not find new housing and had to stay in hotels with my two children.

5.  My ex-husband, who had abused me for years, made repeated calls to Child Protective Services ("CPS") telling them that I didn't have suitable housing for my children. I had multiple encounters with CPS in which I was given various deadlines by which I had to find housing or CPS would remove my children. I was panicked at the thought of losing my children to the system. Even though I looked and looked for housing, I was unable to find anything that I could afford with my income from SSI.

6.  While I was struggling to find housing, I was also a victim of domestic violence, and ultimately CPS removed my children. After losing my children, I was street homeless for about eight months. My children were in foster care from October 2022 through March 2024. I was told by the court repeatedly that I couldn't get my children back until I had stable housing with at least two bedrooms. I was finally able to rent a small apartment in Norfolk, and my children were provisionally returned to me. However, I still struggled to pay the market rent for my apartment. There were constant maintenance issues in that apartment and once the living room ceiling even caved in. I also fell behind on my rent because I couldn't afford that apartment.

2

Even though I had temporary custody of my children, I had constant meetings with my CPS caseworker and multiple court dates. I was terrified that I was going to be evicted because I couldn't afford my rent and I would lose my children again.

7. It was such a relief when my name was finally pulled from the NRHA waitlist. The ability to have housing that I could actually afford--because my rent would only be 30% of my income--was lifechanging. It was also reassuring to know that my lease would renew automatically each year, and I would not be forced to move because a landlord decided to increase the rent beyond what I could afford. I had such a hard time finding affordable housing after the electrical fire in previous home that the ability to move into public housing was a blessing. This was finally a chance for me and my children to have stability.

8. Once I moved into NRHA housing, I was worried about missing information and potentially losing my housing. I knew that utilities were included in my rent, but I also knew that if I exceeded the utility allowance, I would be subject to extra charges which would be included on my monthly rent statement. So, I knew it was important that I received all notices relating to my rent. I also knew that in public housing, there would be periodic inspections and that if I didn't make my home available for those inspections, it could be considered a lease violation. I wanted to make sure that I didn't put my housing at risk, so my attorney submitted a reasonable accommodation request to NRHA asking that all notices be emailed to both me and to Legal Aid. It was such a relief when NRHA granted my reasonable accommodation request. I finally felt comfortable that even if I didn't see something or couldn't read it, Legal Aid would be notified and could help me ensure that I did whatever I needed to do.

9. Over the course of my life, my visual impairment has made it very difficult to complete everyday tasks. Having to constantly ask for accommodations is not only stressful but also

embarrassing and humiliating. I don't want people to view me as somehow less than them. I know I don't have anything to be embarrassed about, but people don't always seem to understand how difficult it can be to be legally blind. So NRHA's apparent willingness to work with me was very reassuring.

10. However, I slowly began to realize that I wasn't getting notices by email, and neither was Legal Aid. Instead, NRHA was ignoring my reasonable accommodation request and continuing to send me notices and statements in the mail and by posting them on my door. My nine-year old daughter found some of those notices and read them to me. First, I don't want to have to rely on a nine-year old because sometimes she misses things and sometimes the notices are too hard for her to read. But even more importantly, my nine-year-old has already been through so much and I don't want her to worry about losing her home and her family again. It makes me sick to think that I may be putting stress on her. Finding out after the fact that NRHA had either mailed or posted a hard copy lease cancellation notice in the fall of 2024 and a Notice of Continued Review of Occupancy/Grounds to Appear in December 2024 sent me into a spiral. I was petrified of losing my housing again and was now terrified that there were other notices that I missed. I couldn't get the thought out of my head that maybe I had missed something, and that one day a sheriff would be at my door waiting to evict me over an unlawful detainer that I never knew about. The thought of losing my housing and my children has preoccupied me. I am constantly terrified and stressed. My sleep and appetite have been affected, and I am consumed with anxiety. Because of a bad car accident in 2018, when I am very stressed, it exacerbates the pain in my back and legs which really affects my mobility. So along with the terror and depression that I have been dealing with on a daily basis, I am experiencing physical pain that is amplified by my stress. But I have also been afraid to talk about this with anyone. As someone

4

who spent over two years going to court for a CPS case, I know that my medical and mental health records will be scrutinized and used against me if a CPS caseworker ever wants to take my kids away. I also don't have family or close friends who I can trust. I never lived with my father and my mother's parental rights were terminated when I was 15. I grew up in foster care and in group homes so I don't have anyone who I can talk to about this stress and worry. I don't understand why NRHA ignored my reasonable accommodation request for so long, even after my attorney asked them to abide by it and after we had to file this lawsuit.

11.  I still lose sleep and cry over whether I might lose my housing. It has been so humiliating to have NRHA constantly disrespect my rights, and I am not sure that I can ever trust them. I have never felt comfortable in my home after realizing that NRHA was not sending electronic notices to me and Legal Aid, and I no longer feel like I can relax and use and enjoy my own home without constantly worrying. This whole experience has made me sad, anxious, depressed, nervous and embarrassed. All I want is to be treated the same way someone would treat a non-disabled person.

12.  I make this declaration from my own knowledge of the facts and circumstances set forth above. If necessary, I could and would testify to these facts and circumstances.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: October 21, 2025

_____
Ms. Jasmine Mayrant